IVOR B. HAWLEY v. INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA.

AND

GEORGE HAWLEY, BY HIS NEXT FRIEND, IVOR B. HAWLEY v.
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.

(Filed 15 June 1962.)

**1. Insurance § 57—**

Under an "omnibus clause" in an automobile liability policy, persons using the vehicle with the express or implied permission of insured are covered, and implied permission involves an inference arising from language or conduct of insured or someone having authority to bind insured in this respect, or a relationship between the parties, under circumstances signifying assent.

**2. Same—**

Evidence tending to show that the employer gave possession of the insured vehicle to its employee with permission to keep it overnights, with the understanding that the employee was not to "do too much running around with it at night," *is held* to permit the conclusion that the employer gave the employee express permission to use the vehicle on personal missions, subject to the limitation against "excessive use," and is sufficient to be submitted to the jury on the question of such employee's coverage under the "omnibus clause" of an automobile accident policy while driving the vehicle on a personal mission at night.

**3. Trial § 22—**

Contradictions and discrepancies, even in plaintiff's evidence, are to be resolved by the jury and do not warrant nonsuit.

**4. Insurance § 3—**

An insurance contract is to be construed and enforced in accordance with its terms insofar as they are not in conflict with pertinent statutes and court decisions.

**5. Insurance § 57—**

In this State, consonant with statutory provisions, G.S. 20-279.21 (b) (2), coverage of an employee under the "omnibus clause" in an automobile liability policy extends only to use by the employee with the express or implied permission of the employer, and while a slight deviation by the employee is not sufficient to exclude him from coverage, a material deviation from the permission given is a use without permission. The fact that while driving the vehicle for a permitted use the employee permits passengers to ride with him contrary to the instructions of the employer will not alone take such use out of the coverage.

**6. Same—**

In determining coverage under an "omnibus clause" in a policy of automobile insurance, the act of the employer in giving initial permission to the employee to use an insured vehicle does not extend to any use thereafter made by the employee while the vehicle is in his possession unless expressly prohibited, but in this State coverage is limited to use by

the employee with the permission of the employer, express or implied, and an instruction applying the more liberal rule must be held for prejudicial error.

APPEAL by defendant from *Clark (Edward B.) S.J.*, November 1961 Term of CUMBERLAND.

Plaintiffs, in separate actions, seek to fix liability upon defendant Insurance Company under the "omnibus clause" of an automobile liability insurance policy. The actions were consolidated for trial.

Infant plaintiff suffered personal injuries and adult plaintiff's property was damaged on 17 June 1960 when a motor vehicle, owned by the latter and in which the former was a passenger, collided with a Chevrolet pickup truck owned by Burkhead DeVane Printing Company and being operated by Joseph L. Monroe, employee of the Printing Company. Plaintiffs recovered judgments against Monroe in the amounts of $5000 and $1520.20, respectively. The judgments have not been paid. The Printing Company (a corporation) is the "named insured" in an automobile liability insurance policy issued by defendant. The policy covers the pickup in question and was in full force at the time of the collision. The policy definition of "insured" includes any person while using the pickup, "provided the *actual use* of the automobile is by the named insured . . . or with the permission" of the named insured.

Plaintiffs allege that Monroe, at the time of the collision, had the permission, express or implied, of the Printing Company to use the pickup, and was an "insured" within the policy definition. Defendant denies these allegations and avers that Monroe was using the pickup without permission and for his own pleasure.

An issue was submitted to and answered by the jury as follows:

"Was Joseph Monroe, at the time of the collision, driving the insured pick-up with the permission, either express or implied, of Burkhead DeVane Printing Company, or anyone having authority to bind it in that respect?

"Answer: Yes."

The court adjudged that defendant pay the judgments theretofore recovered by plaintiffs against Monroe.

Defendant appeals.

*Anderson, Nimocks and Broadfoot for appellant.*
*Hair & Ruppe; Williford & Person for appellees.*

MOORE, J. The crucial question in these actions is whether or not Joseph L. Monroe was operating the pickup at the time of the collision with the permission of his employer, Burkhead DeVane Printing Company.

The evidence bearing on this question is summarized as follows: The Printing Company owned two automobiles and the pickup truck. They were not stored at the place of business at night. Officers of the Company usually kept the automobiles at their homes overnight. Burns, an old and trusted employee, took the pickup to his home each night and kept it there on week-ends. Burns was permitted to drive the pickup to church and could use is locally without special permission. Burns obtained permission on one occasion to use the pickup to transfer furniture for his daughter — Monroe accompanied him on this occasion. Monroe had worked for the Company about five months. On one occasion, about three months before the collision, Monroe was permitted to keep the pickup overnight when Burns was ill, but was instructed to take it "straight home," park it, and bring it "straight back" next morning. During working hours Monroe drove the truck in making deliveries and on other Company business. While on Company business, he had on occasion picked up riders. Upon learning this, Mrs. Burkhead, Secretary-Treasurer, reprimanded him and threatened to fire him if he did so again, and explained that the insurance did not cover passengers. She repeated the warning several times. In June 1960 Mr. Brixon, Vice-President and General Manager, took a two-weeks vacation. Before leaving he arranged for Burns to drive home each night, during the vacation period, the automobile Brixon was accustomed to keep; and Brixon gave Monroe permission to keep the pickup overnight during the vacation. Brixon testified that he specifically instructed Monroe to drive it straight home, park it, and drive it straight back to work, and that Monroe had no permission to use it for his personal business or pleasure. According to Monroe, Brixon said: "Don't do too much running around with it at night." Brixon left on Wednesday for California. On the following Friday night Monroe drove to his home, ate supper, and then drove the pickup about three miles to the home of an aunt. About 10:00 P. M. he left the home of his aunt in the company of two men and a woman, all sitting in the cab of the pick-up, and drove eight miles to a Western Union office so the woman could "pick up" some money. On the return trip the collision occurred — at about 11:15 P. M. Monroe testified that no one ever gave him specific permission to use the truck for any personal business or pleasure, but that Mr. Brixon didn't say he couldn't.

The liability insurance policy in question contains an extended coverage or omnibus clause which insures "any person while using the automobile . . . , provided the *actual use* of the automobile is . . . with the permission of" the named insured. (Emphasis added).

Permission which gives coverage under the omnibus clause may be either express or implied. *Hooper v. Casualty Co.*, 233 N.C. 154, 158,

63 S.E. 2d 128. This is the universally accepted rule. *Hodges v. Ocean Accident & Guarantee Corporation*, 18 S.E. 2d 28, 31 (Ga.), cert. den. 316 U.S. 693, which has reh. den. 317 U.S. 705 (1942). Indeed, compliance with the requirements of the Motor Vehicle Safety and Financial Responsibility Act (G.S., Ch. 20, Art. 9A) necessitates coverage of all who use the insured vehicle with the permission, express or *implied,* of the named insured. Whether the permission be expressly granted or impliedly conferred, it must originate in the language or the conduct of the named insured or of someone having authority to bind him or it in that respect. *Hooper v. Casualty Co., supra.*

In the cases at bar we are concerned with permission granted by employer to employee. As to cases involving omnibus clauses in automobile liability insurance policies and relating to permission from employer to employee, there is an exhaustive annotation in 5 A.L.R. 2d, pp. 601-690, reviewing all pertinent legal principles. A general or comprehensive permission is much more readily to be assumed where the use of the insured motor vehicle is for social or nonbusiness purposes than where the relationship of master and servant exists and the usage of the vehicle is for business purposes. *Jordan v. Shelby Mut. Plate Glass & Casualty Co.,* 51 F. Supp. 240 (W.D. Va. 1943). Where express permission is relied upon it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. On the other hand, implied permission involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. *Hinton v. Indemnity Ins. Co. of North America,* 8 S.E. 2d 279 (Va. 1940).

While it is a universally accepted rule that permission which will effectuate coverage under the usual omnibus clauses may be either express or implied, there is a wide difference of opinion in the construction of the term "permission" as used in such clauses. The main difference in construction "is whether the permission is confined to the time when the accident occurs or whether it is defined as permission 'in the first instance'. . . ." *Hodges v. Ocean Accident & Guarantee Corporation, supra.* Court opinions construing "permission" especially as between employer and employee, may conveniently be placed into three categories or classifications (though this is a somewhat oversimplification), from which three rules are evolved:

(1) The strict or "conversion" rule. Under this rule, the permission, express or implied, which will bring the operator-employee within the coverage of the policy, must be given to the employee not only to use the vehicle in the first instance, but also for the particular use being made of the vehicle at the time in question. "In other words, the

automobile must have been used for a purpose reasonably within the scope of the permission given, during the time limits expressed, and within the geographical limits contemplated." 5 A.L.R. 2d 622; *Johnson v. American Automobile Insurance Co.*, 161 A. 496 (Me. 1932); *Blair v. Travelers Insurance Co.*, 197 N.E. 60 (Mass. 1935); *Gray v. Sawatzki*, 289 N.W. 227 (Mich. 1939).

(2) The liberal or "initial permission" rule. Operator-employee is insured if he has permission to take the vehicle in the first instance, and any use while it remains in his possession is "with permission" though that use may be for a purpose not contemplated by the named insured when he parted with possession. 5 A.L.R. 2d 622; *Stovall v. New York Indemnity Co.*, 8 S.W. 2d 473 (Tenn. 1928); *Dickinson v. Maryland Casualty Co.*, 125 A. 866 (Conn. 1924); *Parks v. Hall*, 181 S. 191 (La. 1938); *Matits v. Nationwide Mutual Insurance Co.*, 166 A. 2d 345 (N.J. 1960). This view has been referred to as the "hell and high water" rule. 7 Appleman: Insurance Law and Practice, s. 4366, p. 308.

(3) The moderate or "minor deviation" rule. A material deviation from the permission given constitutes a use without permission, but a slight deviation is not sufficient to exclude the employee from the coverage under the omnibus clause. *Hodges v. Ocean Accident & Guarantee Corporation, supra; United States Fidelity & Guaranty Co. v. Brann*, 180 S.W. 2d 102 (Ky. 1944); *State Farm Mutual Automobile Insurance Co. v. Cook*, 43 S.E. 2d 863 (Va. 1947).

*Hooper v. Casualty Co. supra,* is the only case in this jurisdiction which fits into the factual and legal category to which the instant cases belong. In that case it was deemed unnecessary to expressly adopt either of the rules of construction above stated. Indeed, it is unnecessary to make a choice on the present appeal in determining the question of nonsuit; but it is otherwise in ruling on the exception to the charge.

It is our opinion that the evidence is sufficient to make out a *prima facie* showing of *express* permission. Considered in the light most favorable to plaintiffs, it tends to show that the pickup was put in the possession of Monroe for a period of two weeks, with permission to keep it overnights and with the understanding that Monroe was not to "do too much running around with it at night." This permits the conclusion that non-excessive use at night was authorized. There is no evidence of any personal use of the car by Monroe at night other than on the occasion in question. It is true that Monroe testified on cross-examination: "In a way, I guess I did violate their express instruction by riding people in it and using it for my personal business." Conflicts and contradictions in the evidence, even though such occur in the evidence

offered in behalf of plaintiff, are to be resolved by the jury, not by ,the court. *Stathopoulos v. Shook,* 251 N.C. 33, 36, 110 S.E. 2d 452.

However, the challenged portion of the charge requires us to construe the omnibus clause. It seems that the court below applied the liberal or "hell and high water" rule. It is well settled that plaintiff has the burden of showing that there was permission to use the vehicle. 5 A.L.R. 2d 666 (citing many cases); *Kirk v. Insurance Co.,* 254 N.C. 651, 654, 119 S.E. 2d 645. The strict and moderate rules of construction seem to speak in terms of affirmative burden, *i.e.,* of permission *granted* or *given.* 5 A.L.R. 2d 622; 7 Appleman: Insurance Law and Practice, ss. 4367, 4368, pp. 312, 321. Under the liberal rule there are holdings that employer cannot limit the use once initial permission is granted. *Jerson v. London Guarantee & Accident Co.,* 11 N.E. 2d 993 (Ill. 1937); *Konrad v. Hartford Accident & Indemnity Co.,* 137 N.E. 2d 856 (Ill. 1956); *United States Fidelity & Guaranty Co. v. De Cuers,* 33 F. Supp. 710 (E.D. La. 1940). But as to deviations in violation of *express prohibition* by employer, most of the courts, even those embracing the liberal rule, are in agreement that the use of the vehicle by employee for prohibited personal purposes is not a permissible use within the meaning of the omnibus clause. In other words, under the liberal rule, if permission is given initially, anything goes unless specifically prohibited. *Waits v. Indemnity Insurance Co. of North America,* 33 S. 2d 554 (La. 1947), and cases therein cited.

The court below, in its final application of the law to the facts, instructed the jury: ". . . if you find from the evidence and by its greater weight, the burden being upon the plaintiff to so satisfy you, that either (naming officers of the Printing Company) did not expressly or by their previous acts and course of conduct impliedly *prohibit* the said Joseph Monroe from using for personal purpose the said company pick-up truck after driving it to his home from the plant following the day's work on June 17th, 1960, then I instruct you that this said Joseph L. Monroe was operating said vehicle with permission. . . ." (Emphasis ours). This instruction assumes, as a matter of law, that initial permission was granted and was comprehensive and unlimited if specific uses were not expressly forbidden and prohibited. Under the liberal rule of construction this instruction is not improper; but under the strict rule or the moderate rule it is erroneous and fails to put upon plaintiffs the burden of showing, as an affirmative matter, the nature and extent of the permission granted.

The wide-spread enactment of financial responsibility and compulsory insurance laws has caused a decided trend in the courts toward liberal construction of omnibus clauses. We have expressed the view that it is the purpose of the Financial Responsibility Act to provide

protection for persons injured or damaged by the negligent operation of automobiles. *Swain v. Insurance Co.*, 253 N.C. 120, 116 S.E. 2d 482. The Motor Vehicle Safety and Responsibility Act of 1947 provided that insurance policies issued in conformity therewith must "insure as insured the person named, and any other person using or responsible for the use of the motor vehicle with the permission, express or implied, of the named insured, *or any other person* in lawful possession." S.L. 1947, Ch. 1006, s. 4(2)(b), codified as G.S. 20-227(2)(b). This provision was sufficiently broad to embrace the liberal rule. It required that policies of insurance insure all operators, irrespective of limits of permission, if in the lawful possession of the vehicle. But the Legislature repealed this provision in 1953 and provided for insurance coverage for "the person named therein and any other person . . . using any such motor vehicle . . . with the express or implied permission of such named insured. . . ." S.L. 1953, Ch. 1300, s. 21, codified as G.S. 20-279.21(b)(2). We interpret this statutory change to mean that the Legislature intended no more radical coverage than is expressed in the moderate rule of construction, *i.e.*, coverage shall include use with permission, express or implied. An insurance policy is a contract between the parties, and the intention of the parties is the controlling guide in its interpretation. It is to be construed and enforced in accordance with its terms insofar as they are not in conflict with pertinent statutes and court decision. *Kirk v. Insurance Co., supra.* It does not seem reasonable to assume that parties to an insurance contract covering a vehicle used in business contemplate an indiscriminate use for the social and separate business purposes of employees of named insured unless permission, express or implied, is given for such additional uses. To hold that the scope of any permission cannot be limited would be strange "in view of the fact . . . owner could sue (employee) bailee for conversion of the automobile in exceeding his permission." 7 Appleman: Insurance Law and Practice, s. 4366, p. 311. Furthermore, the policy in the instant case uses the term "actual use" in reference to permission granted. In our opinion this term confines the coverage to situations where the use made of the vehicle at the time of the accident is within the scope of the permission granted. 7 Appleman: Insurance Law and Practice, s. 4354, p. 241; *Gulla v. Reynolds*, 81 N.E. 2d 406 (Ohio 1948). The challenged instruction was erroneous. This entitles defendant to a new trial.

Where the violation of permission consists merely of carrying guests in the vehicle, and the employee's use of the vehicle is otherwise permitted, the fact alone that the employee permitted riders on the vehicle will not serve to annul the permission of the employer so as to

take the employee out of the protection of the omnibus clause. This is in accord with the substantial weight of authority. 5 A.L.R. 2d 654.

Plaintiffs do not seek recovery under the doctrine of *respondeat superior* and therefore G.S. 20-71.1 has no application in these cases. *Roberts v. Hill,* 240 N.C. 373, 82 S.E. 2d 373.

New trial.