**Melvin Ray CAIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–97–00281–CR.

Court of Appeals of Texas,
San Antonio.

May 29, 1998.

Michael C. Gross, San Antonio, for appellant.

Alan E. Battaglia, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before HARDBERGER, C.J., RICKHOFF and DUNCAN, JJ.

RICKHOFF, Justice.

Appellant Melvin Ray Cain was convicted of murder, and the jury assessed punishment at sixty years imprisonment. In six points of error, appellant challenges the legal and factual sufficiency of the evidence, argues he was denied the right to proceed without counsel, and claims ineffective assistance of counsel during the punishment phase of the trial. We affirm.

### FACTUAL BACKGROUND

Because Cain raises legal and factual sufficiency, we review the evidence. Frank Brown was killed at approximately 3:00 A.M. on June 24, 1995 by a single gunshot to the head. The medical examiner, Robert Bux, M.D. testified that a 7.62 mm slug found in Brown's head was the cause of death, and that the slug was extremely deformed, consistent with striking an intermediate target such as an automobile.

Detective Marc Randle testified he investigated three crime scenes connected with this death. Randle stated he found eight 9 mm and five 7.62 mm shell casings at the scene of the shooting, near the intersection of Goldsmith Avenue and Rosary Street. He also described a silver 1989 Honda he examined at a hospital, in which Brown was sitting when shot. Randle testified the vehicle had two bullet holes in the passenger door, and a bullet hole following a path from the right rear of the vehicle, through the trunk and back seat, and through the passenger seat. According to Randle, this path was consistent with the shooting of Brown in the head while sitting in the passenger seat. Finally, Randle investigated a vehicle stopped by police within the East Terrace Homes, which contained a 7.62 mm assault rifle and a 9 mm pistol. Randle testified both weapons were semiautomatics, meaning that they eject a cartridge immediately when fired.

Police officer Robert Glenn stated that when he heard multiple gunshots from within the East Terrace Homes at 2:59 A.M. June 24, 1995, he made a radio report of the shooting; within about one to three minutes of the shots saw a silver compact car speeding out of a parking lot of the adjacent apartments. At about the same time, Glenn was approached by Eric Williams, who appeared to be covered with blood. Glenn testified Williams stated that his friend had been shot and that the silver car was taking his friend to the hospital.

Police officer James Cline testified he heard multiple gunshots at 2:59 A.M. from within the East Terrace Homes. Cline heard Glenn's radio report of the shots, immediately entered the area and within thirty seconds saw an automobile leaving the scene of the shooting. According to Cline, the vehicle had no lights on; another police car, which was driven by Officer Richard Floores, was close behind. Cline identified the driver as appellant Melvin Ray Cain, and said there was one passenger.

Cline testified he saw the suspect vehicle run a stop sign and lit his emergency lights in an attempt to stop the vehicle. Rather than stopping, the vehicle accelerated slightly. After a short chase, the suspect vehicle stopped abruptly and the doors were flung open. Cline testified he saw Floores block the passenger's escape with his police car. Cline said he then approached the driver's side of the vehicle on foot. Cline testified Floores was on the passenger side, and Floores ordered the passenger to put his

hands out the window. Cline said Cain did not exit the vehicle, and while Cline approached, he saw Cain holding a 9 mm pistol. Cline testified both officers continued to order Cain to drop the weapon and show his hands, until Cline had his pistol inches from Cain's head and Cain finally complied and dropped his gun. Cline testified to seeing an assault rifle wrapped in a shirt between the passenger's legs.

Officer Floores testified he was patrolling near East Terrace, heard a radio report of shots fired, and thirty seconds later saw a vehicle driving south from Goldsmith with no lights on. Floores testified that vehicles approaching and leaving drive-by shootings commonly drove without lights, so he followed the suspicious vehicle. He said the suspect ran a stop sign, Floores turned on his emergency lights, and the vehicle accelerated slightly. Floores testified that the vehicle then came to a sudden stop, and he saw the passenger door open. Floores said he blocked the passenger's escape with his vehicle, and then approached on foot. Floores identified the driver as Melvin Ray Cain. Floores testified he was yelling at the passenger to put his hands out the window, and when the passenger complied, Floores saw Cain remain seated in the driver's seat holding a 9 mm pistol. Floores testified he was prepared to shoot Cain, but feared hitting Cline. Floores testified Cain then dropped the pistol and the passenger was holding an assault rifle between his legs. Finally, Floores testified that the assault rifle bore the letters "ETG," matching a tattoo on Cain's right wrist.

Richard Stengel qualified as an expert on firearms and toolmarks based on over twenty years experience. He examined the two weapons taken from Cain and his passenger, the thirteen shell casings from the murder scene, and the slug removed from the victim's head. Stengel compared the casings found by police and the slug found by Bux with casings and a slug he fired from the weapons in the laboratory. Based on these makings, he testified the slug from the victim had been fired from the assault rifle held by Cain's passenger, the five 7.62–mm casings at the murder scene were fired from that same

rifle, and the eight 9–mm casings at the scene had been fired from the pistol possessed by Cain. Furthermore, Stengel said the assault rifle was inscribed with the initials "ETG," which matched a tattoo on Cain's right wrist.

Assistant District Attorney Wendy Davis testified that the State had tried to call Eric Williams, the bloody man who had approached Cline. Davis testified Williams refused to tell the truth and testify under oath.

Cain's case in chief consisted of the testimony of two witnesses. Trisha Carter testified that Cain was at her home from 12:00 noon until after hearing the gunshots on the morning in question. On cross-examination, she testified that Cain had stayed for about twenty minutes after the shots. She also said that although she knew of Cain's arrest for this murder, she never went to police with this information, but waited until trial two years later. Carter also testified that prior to trial, she had visited Cain "a couple of times" in jail.

Cain also called the lead homicide detective on this murder, David Evans. Among other things, his testimony was that a "gunshot residue test" was conducted on Cain after his arrest. The results were negative, meaning that no lead or barium was detected on Cain's hands. On cross-examination, Evans stated that results were often negative even where numerous credible witnesses had seen the tested person fire a gun. In fact, the officer testified the residue test was no longer used by the medical examiner. Finally, Evans said he had received a tip indicating that another person may have been involved with the shooting, but that person was never found and questioned by the police.

In rebuttal, the State called Sgt. Mark Gibson, a jail records custodian. He testified Carter had actually visited Cain on nine separate occasions in jail before the trial. Gibson also testified that nine was more than "a couple" of visits.

Finally, Bexar County Deputy District Clerk Mary White testified Cain was appointed his attorney on October 4, 1995, and investigators were appointed to assist on March 11, 1997 and January 9, 1996.

## LEGAL SUFFICIENCY

■ Appellant's first point of error challenges the legal sufficiency of the evidence to support the jury's verdict. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994). The evidence is examined in the light most favorable to the jury's verdict. *Jackson,* 443 U.S. at 320, 99 S.Ct. 2781; *Johnson,* 871 S.W.2d at 186. The standard is the same in both direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). All of the evidence is considered by the reviewing court, regardless of whether it was properly admitted. *Johnson,* 871 S.W.2d at 186; *Chambers v. State,* 805 S.W.2d 459, 460 (Tex. Crim. App. 1991); *Thomas v. State,* 753 S.W.2d 688, 695 (Tex. Crim. App. 1988). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *Tibbs v. Florida,* 457 U.S. 31, 41–42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

The sufficiency of the evidence is measured against the offense defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restricts the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

■ The jury is the trier of fact, and is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony. *See* TEX. CODE CRIM. PROC. ANN. Art. 38.04 (Vernon 1979); *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex. Crim. App. [panel op.] 1981). It is for the jury as trier of fact resolve any conflicts and inconsistencies in the evidence. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). Even where there is no conflict, the jury may give no weight to some evidence, and thereby reject part or all of a witness's testimony. *See Beardsley v. State,* 738 S.W.2d 681, 684 (Tex. Crim. App. 1987); *see also Chambers,* 805 S.W.2d at 461 (holding jury as judge of credibility may "believe all, some, or none of the testimony"). Because it is the province of the jury to determine the facts, any inconsistencies in the testimony should be resolved in favor of the jury's verdict in a legal sufficiency review. *Johnson v. State,* 815 S.W.2d 707, 712 (Tex. Crim. App. 1991) (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).

Cain was convicted of one count of murder. The Jury was charged in accordance with TEX. PENAL CODE ANN. § 19.02(b)(1),(2) (Vernon 1994), defining murder as "intentionally and knowingly caus[ing] the death of an individual; [or] intend[ing] to cause serious bodily injury and commit[ting] an act clearly dangerous to human life that causes the death of an individual." Specifically, Cain complains that the evidence failed to put him at the crime scene and that the evidence failed to link Cain to the murder weapon.

■ While there was no direct testimony placing Cain at the crime scene, direct evidence is not required where the circumstantial evidence is sufficient. *See Earls v. State,* 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (noting identity of perpetrator may be proved by direct or circumstantial evidence). The evidence shows that within thirty seconds of the gunshots, Cain and a passenger were driving within blocks from the scene with no lights on. Cain ran a stop sign and then attempted to flee the police. When Cain stopped, he was holding a weapon which had fired five shots at the scene. Furthermore, he was riding with a passenger who held the murder weapon. Carter, Cain's Alibi witness, testified he was elsewhere. Viewing this conflicting evidence in the light most favorable to the verdict, we conclude a rational jury could find Cain culpable in this murder, based on the circumstantial proof

and not the contradictory testimony of Carter.

■ On the weapon issue, Cain asserts that the verdict is not supported because the jury was not instructed on conduct/result and conspiracy. *See* TEX. PENAL CODE ANN. §§ 6.04(b), 7.02(b) (Vernon 1994). However the jury was instructed on the law of parties. Even where there is no evidence that the defendant fired the actual shots which killed, the law of parties may sustain a conviction for murder. *See McFarland v. State*, 928 S.W.2d 482, 496 (Tex. Crim. App. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997) (recognizing state need not prove defendant fired fatal shot to sustain capital murder conviction). The jury was instructed in accordance with TEX. PENAL CODE ANN. §§ 7.01 & 7.02(a)(2) (Vernon 1994). The charge tracked the statute, reading as follows: "A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offence he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."

■ Despite the fact that Cain did not personally possess the murder weapon at his arrest, a rational jury could find he was acting in concert with his passenger. At 3:00 A.M., they were both armed, in the same automobile, shortly after the murder, near the scene. Cain had the car's lights off, which Floores testified is a recognized tactic of people committing drive-by shootings. Both possessed weapons which had been fired at the murder scene. The passenger's assault rifle bore the same initials as a tattoo on Cain's wrist, clearly suggesting an association between him and the weapon. This evidence could show a jury action with a common design and intent; namely a murder by multiple gunshot. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (opinion on reh'g), *cert. denied,* —— U.S. ——, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996) (recognizing validity of circumstantial evidence to prove party status). Under the law of parties, the fortuity that only a bullet from Cain's partner struck the victim, and the fact that Cain is a poor marksman, will not ab-

solve Cain of criminal responsibility. The circumstantial evidence could convince a jury that Cain and his passenger were acting together to intentionally or knowingly cause Brown's death, or that Cain and his passenger intended serious bodily injury and caused death by an act clearly dangerous to human life, namely shooting at an occupied car thirteen times.

Because a rational trier of fact could have found the essential elements of a murder beyond a reasonable doubt, there is legally sufficient evidence to support the verdict. Appellant's first point of error is overruled.

### FACTUAL SUFFICIENCY

■ Appellant's second point of error challenges the factual sufficiency of the evidence to sustain the jury's verdict. *See Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). In conducting factual sufficiency review, the evidence is no longer viewed in the light most favorable to the verdict. *Id.* at 134 (quoting with approval *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed)). The verdict will be set aside, and the cause remanded for a new trial, if contrary to the overwhelming weight of the evidence and therefore clearly wrong and unjust. *Id.* at 129. While the evidence is viewed without the prism of the light most favorable to the verdict, a reviewing court must be deferential to the fact finder, i.e., careful not to invade the province of the jury to assess the credibility and weight of the evidence. *Id.* at 133, 135; *De Los Santos v. State*, 918 S.W.2d 565, 569 (Tex. App.—San Antonio 1996, no pet.).

■ In particular, Cain asserts three factual sufficiency issues for review; he reasserts the claim of a lack of evidence putting him at the murder scene and adds his alibi evidence and the lack of gunshot residue on his hands. Cain contends that these facts make the verdict against the great weight of the evidence. As detailed above for legal sufficiency, there is circumstantial evidence tending to show Cain was present at the murder scene. This evidence is contradicted by Cain' alibi witness, Trisha Carter. This conflict in the evidence requires a jury to

determine the facts. Carter admitted she was biased in Cain's favor. She was also impeached by a prosecution rebuttal witness, concerning her visitation with Cain in jail. The jury, swayed by these credibility problems, was entitled to believe the other version of events. *See Bowden,* 628 S.W.2d at 784. Such a finding is not so contrary to the great weight of the evidence as to be manifestly unjust.

Cain also attacks the verdict due to the gunshot residue test results. After arrest, Cain tested negative for lead and barium on his hands. The testimony showed that while firing a gun might leave this residue, the test is extremely unreliable. The test showed only that there was not enough residue left on Cain's hands for a positive result. There was testimony that within seconds of a shooting, Cain possessed one firearm and was driving a passenger with another firearm, both of which were fired at the murder scene. It is difficult to prove a negative, i.e., that Cain *did not* fire a weapon, and despite the test results, a jury finding that Cain nevertheless fired a weapon is otherwise supported by the circumstances of this case.

We believe the verdict is not against the great weight and preponderance of the evidence and is not clearly wrong and unjust. Accordingly, appellant's second point of error is overruled.

### DISMISSAL OF COUNSEL

In points of error three and four, Cain contends he was denied the right to proceed without counsel as guaranteed by the Sixth Amendment to the Federal Constitution and Article I, Section 10 of the Texas Constitution.

The Sixth Amendment guarantees defendants the right to assistance of counsel in criminal cases. *See Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Implied in the right to counsel and the other protections of the Sixth Amendment is a right to self-representation. *Id.* at 820, 95 S.Ct. 2525; *Funderburg v. State,* 717 S.W.2d 637, 641 (Tex. Crim. App. 1986). Article I, Section 10 of the Texas Constitution does not encompass the right to counsel as delineated in *Faretta. See Landers v. State,* 550 S.W.2d 272, 277 (Tex. Crim. App. 1977) (opinion on reh'g) (distinguishing right to counsel from right to be heard). The federal right to self-representation is incorporated to state criminal proceedings via the Fourteenth Amendment. *Funderburg,* 717 S.W.2d at 638 n. 1. However, the right to represent oneself will not attach until it is clearly and unequivocally asserted. *Ex Parte Winton,* 837 S.W.2d 134, 135 (Tex. Crim. App. 1992); *Funderburg,* 717 S.W.2d at 642. In order to properly assert the right to self-representation, the defendant must knowingly and intelligently waive the right to counsel, after being made aware of the dangers and disadvantages of doing so. *Funderburg,* 717 S.W.2d at 642. To be a timely assertion, the right must be asserted before the jury is empaneled. *Winton,* 837 S.W.2d at 135. When a defendant has properly asserted the right to proceed *pro se,* "he should be allowed to so proceed so as long as the assertion of his right to self-representation is unconditional and not asserted to disrupt or delay the proceedings." *Id.*

Cain was appointed counsel on October 4, 1995. On November 14, 1996, Cain filed a *pro se* "Motion to Dismiss Counsel." The motion stated disagreement, conflict, and a lack of cooperation between Cain and his attorney. It further stated that Cain felt misrepresented, and requested dismissal of counsel. The motion neither indicated a desire for a different attorney, nor did it request Cain be allowed to proceed without counsel. No hearing was requested, and the motion was denied without a hearing the day it was filed.

A defendant unhappy with appointed counsel must accept the assigned attorney, effectively waive counsel and represent himself, or show adequate cause for a change of attorney. *Thomas v. State,* 550 S.W.2d 64, 68 (Tex. Crim. App. 1977) Cain's motion speaks vaguely of disagreement and conflict between himself and his attorney. However, a trial court is not required to search for an appointed counsel who is agreeable to the accused. *Solis v. State,* 792 S.W.2d 95, 100 (Tex. Crim. App. 1990). In-

stead, the accused has the burden of showing he is entitled to a change of counsel. *Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985); *Webb v. State*, 533 S.W.2d 780, 784 n. 3 (Tex. Crim. App. 1976); *Brazil v. State*, 665 S.W.2d 561, 562 (Tex. App.—San Antonio 1984, no pet.). Furthermore, a hearing on the motion will not be required where one is not requested. *See Malcom v. State*, 628 S.W.2d 790, 792 (Tex. Crim. App. [panel op.] 1982); *Garner v. State*, 864 S.W.2d 92, 100 (Tex. App.—Houston [1st dist.], pet. ref'd )

■ Cain contends that because there was no request for another appointed counsel, the motion is a waiver of representation. The motion complains of dissatisfaction with his attorney and only requests that counsel be dismissed. The motion does not affirmatively waive the right to counsel, nor does it request that Cain be allowed to proceed representing himself. That does not suffice as a clear and unequivocal assertion of the right of self-representation. Absent a more definite assertion, a waiver of the right to counsel will not be found. *Cf. Thomas*, 550 S.W.2d at 67 (noting presumption against waiver of Constitutional right to counsel).

Appellant's third and fourth points of error are overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Cain's fifth and sixth points of error claim ineffective assistance of counsel at the punishment phase of the trial, in derogation of his right to counsel guaranteed by the Sixth Amendment and Article I, Section 10 of the Texas Constitution.

■ The standard for effective assistance of counsel at the punishment phase of a non-capital case is whether the totality of representation shows counsel who was reasonable likely to render and rendering reasonably effective assistance. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996); *Ex Parte Cruz*, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). The standard in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is not

applicable in the punishment phase of non-capital cases in Texas, where the sentencer has standardless discretion. *See Cruz*, 739 S.W.2d at 57–58. To overcome the presumption that counsel is effective, the appellant bears the burden of demonstrating ineffective assistance of counsel. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984); *Lanum v. State*, 952 S.W.2d 36, 40 (Tex. App.—San Antonio 1997, no pet.). A defendant is entitled to reasonably effective counsel, not perfect counsel judged by hindsight; therefore, more than isolated errors and omissions will be needed to demonstrate ineffective assistance of counsel. *See Lanum*, 952 S.W.2d at 40.

■ Cain complains that trial counsel was ineffective during the punishment phase by failing to move to strike testimony concerning gang membership, and by failing "to object to the voluntariness of the Appellant's alleged statement that he was a member of the ETG's." Cain contends the gang evidence was not admissible, citing *United States v. Lemon*, 723 F.2d 922, 941 (D.C. Cir. 1983). However, the D.C. Circuit's interpretation of federal law are not binding on this Court.[1] In order to argue that counsel's failure to object amounts to ineffective assistance, Cain must show that the trial judge would have committed error in overruling the objection. *Vaughn*, 931 S.W.2d at 566.

■ The Texas Code of Criminal Procedure permits evidence on any matter the court deems relevant to sentencing, including the defendant's general reputation, his character, and opinion regarding his character. *See*TEX. CODE. CRIM .PROC. ANN. Art. 37.07 § 3(a) (Vernon Supp. 1998). Detective John Dyer, an officer in a gang intelligence unit of the San Antonio Police Department, testified to establish Cain's membership in a gang and to show that gang's reputation. The testimony showed the gang's reputation for extreme violence and criminal activities, including robberies, carjackings, murders, capital murders, and sexual assaults. Cain's membership in such a gang is relevant to his character, which is an issue in sentencing. *See*

---

1. This is the case, even thought the Court of Criminal Appeals accepted *Lemon* as sound Constitutional interpretation for the specific purpose

of discussing *Fuller v. State*, 829 S.W.2d 191, 196 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993).

*Beasley v. State,* 902 S.W.2d 452, 457 (Tex. Crim. App. 1995) (plurality op.) (noting gang membership relates to character only insofar as gang's general activities would relate to character); *see also Pondexter v. State,* 942 S.W.2d 577, 584 n. 2 (Tex. Crim. App. 1996) (explaining relevance of character at sentencing as distinguished from guilt/innocence phase of trial). Because an objection to this testimony would have been properly overruled, the failure to object cannot amount to ineffective assistance of counsel.

 Cain also contends that counsel was ineffective for failing to object to the voluntariness of a statement he made while in custody admitting his membership in the ETG. However, failure to object to inadmissible evidence is not necessarily ineffective assistance. *See Ybarra v. State,* 890 S.W.2d 98, 113 (Tex. App.—San Antonio 1994, pet. ref'd) (applying first prong of *Strickland* ). Cain's membership was also evidenced by the testimony of Dyer, who testified Cain was a documented member of the ETG. Furthermore, Cain had two tattoos of "ETG" and his "little Cain" tattoo, described as a gang "tag name" by Dyer. Failing to object to this testimony may be considered within the bounds of trial strategy, considering the evidence was cumulative of evidence already before the jury, and counsel at trial is better suited to determine strategy than this Court reviewing a cold record. Failure to object to this cumulative evidence will not overcome the strong presumption that counsel was reasonably effective. Appellant's fifth and sixth points of error are overruled.

The judgment of the trial court is affirmed.