**UNITED FIRE & CASUALTY COMPANY, Plaintiff–Appellant,**

v.

**Michelle THARP, Shanna Tharp, Lloyda Tharp, Vicki Tharp, Darrin Tharp, Sylvia Vaughan, Michael Bland, Dennis Hyman, Michael Tharp, and Robert Tharp, Defendants–Respondents.**

No. 23606.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 2001.

Motion for Rehearing and Transfer Denied May 21, 2001.

Application for Transfer Denied June 26, 2001.

Laurel Stevenson and John G. Schultz, Springfield, for Appellant.

Daniel T. Ramsdell & Charles K. Willoughby, Ramsdell Law Firm, Springfield, for Respondents Lloyda Tharp, Michelle Tharp and Shanna Tharp.

John M. Henderson, Jr., Springfield, for Respondents Vicki Tharp and Darrin Tharp.

James E. Corbett, Corbett & Larson, Springfield, for Respondent Sylvia Vaughan.

Randy P. Scheer & Benjamin A. Joplin, Blackwell Sanders Peper Martin LLP, Springfield, for Respondent Michael Bland.

Erik Martin Belk, Springfield, for Respondent Dennis Hyman.

Tad K. Morlan, Springfield, for Respondents Michael and Robert Tharp.

Randy R. Cowherd, Newberry, Haden, Cowherd, Bullock, Keck & McGinnis L.L.C., Springfield, for Amicus Curiae Farmers Insurance Company, Inc., and State Farm Mutual Automobile Insurance Company.

SHRUM, Judge.

The issue presented by this appeal is whether Dennis Hyman ("Hyman") had liability insurance coverage for claims arising from an accident that occurred while he was driving his employer's van. Specif-

ically, did Hyman become a non-permissive driver and lose coverage which otherwise existed because at the time of the accident, he was violating his employer's rules against (1) transporting non-company passengers, and (2) alcohol usage? The trial court, in entering summary judgment against United Fire & Casualty Company ("United"), found there was coverage. United appeals. We affirm.

## JURISDICTIONAL ISSUE

■ Initially, we consider whether indispensable parties exist whose absence from this case deprived the trial court and now this court of jurisdiction. This issue arose after companies insuring Sylvia Vaughan's and Lloyda Tharp's vehicles sought to intervene after the case reached this court. Although the insurers' requests to intervene were denied, *see Aetna Life Ins. Co. v. Litteer*, 621 S.W.2d 376, 379[1] (Mo.App.1981), they were allowed to address issues via *amicus curiae* briefs. All parties to the appeal filed amended briefs on whether Vaughan's and Tharp's insurers were indispensable parties. The focus of their arguments is *Automobile Club Inter–Insurance v. Nygren*, 975 S.W.2d 235 (Mo.App.1998). There we found that Old Republic Insurance Company was an indispensable party without whose presence the trial court could not proceed under the Declaratory Judgment Act. *Id.* at 240. However, the situation in *Nygren* was wholly different from the one here, in that, the plaintiff there (although a complete stranger to the Old Republic policy) asked the trial court to declare which insurer's coverage was primary and to decide the extent of Old Republic's policy. The trial court acceded to the request; thus, the court purported to affect Old Republic's contract rights when it was not a party. *Id.* at 239. That is not this case. United did not ask the court to declare, nor did the court purport to decide, any-

thing regarding the policies issued by Vaughan's or Tharp's insurers. *Nygren* should not be read to suggest anything about indispensable parties beyond its facts. Neither Vaughan's nor Tharp's insurer were indispensable parties; consequently, their absence from the case did not deprive the trial court of jurisdiction.

## STANDARD OF REVIEW

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376[7] (Mo.banc 1993). The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law. *Id.* at 376[6].

> " 'When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require a trial, and determine if the judgment is correct as a matter of law.' "

*Judy v. Arkansas Log Homes Inc.*, 923 S.W.2d 409, 414[5] (Mo.App.1996) (quoting *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886[6] (Mo.App.1993)). A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

## FACTS AND PROCEDURAL BACKGROUND

The pleadings and other documents before us reveal the following. On May 18, 1995, Hyman was working for Sunshine Lighting Co. ("Employer") installing light

fixtures at an Osco drugstore in Springfield. While working there, Hyman met Angela Monday ("Angela"), an Osco employee. When their workday ended, Hyman, Angela, Jeff Waller (Hyman's employment supervisor), and Angela's friend left the store together. At that point, the four people were in a vehicle driven by Angela's friend. They first drove to a liquor store where Hyman bought a half-pint bottle of whiskey. After driving around "for a while," Angela's friend returned them to the store. Hyman and Angela got into a service van owned by Employer, and the foursome parted company.

Hyman and Angela then left in the van, with Hyman driving, and went to a party, arriving at approximately 8:00 p.m. and departing sometime between 10:00 and 10:30 p.m. Upon leaving, Hyman was again driving Employer's van, and Angela was a passenger. Their destination was a restaurant located "not too far from" the Osco store where they were "going to get something to eat." While en route to the restaurant, the van driven by Hyman collided with a vehicle driven by Michael Bland resulting in the death of Robert Tharp, Bland's passenger.

Robert Tharp's family members sued Michael Bland and others for Tharp's wrongful death. Later, Employer and Hyman were joined as defendants in that litigation, and Bland filed a third-party petition against Hyman. Thereon, Employer's insurer, United, filed this declaratory judgment suit seeking a determination it owed no duty to defend or indemnify Hyman because Hyman allegedly did not have permission to use Employer's vehicle at the time of the accident.

The omnibus clause in United's policy is found under the heading, "Who Is An Insured." Section II A. thereof provides that insureds are: "a. You for any covered 'auto;' b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow...."

It is undisputed Employer allowed its out-of-town employees, including Hyman, to drive company vehicles after work-hours to obtain meals.[1] Herb Mendelson, president of Employer, specifically testified he understood Hyman would be using the van involved in this accident to go to dinner after working hours and could go at whatever time he chose. Even so, United claims Hyman, at the time of the accident, did not have Employer's permission to use the van within the meaning of the policy because (a) Hyman allowed a non-employee (Angela) in the van as a passenger in direct contravention of a company employment manual, and (b) Hyman drove Employer's van after drinking whiskey despite a policy "posted in 1995" that "prohibited [employees] from drinking while engaged in the work of the company."

Some of the Respondents filed motions for summary judgment.[2] The trial court sustained those motions, declaring, *inter alia*, Hyman's transporting of Angela related to "operation" of the van and not its "use." The court concluded "[b]ecause Mr. Hyman was permitted to use the van at the time of the collision, [United] is obligated to extend coverage to Mr. Hy-

---

1. When working out-of-town, employees could also use company vehicles after work hours to (a) go to and from job sites, (b) pursue entertainment activities such as bowling or attending movies, (c) obtain fuel for the vehicles, and (d) select a motel and travel between motel and job site.

2. Respondents are in the class of persons authorized by § 537.080(1), RSMo 1994 to recover damages for the wrongful death of Robert Tharp.

man under the omnibus clause of the policy and under Section 303.190 RSMo." United's appeal to this court followed.

## DISCUSSION AND DECISION

### POINT I: DID VIOLATION OF "NO PASSENGER" RULE ANNUL COVERAGE?

In its first point, United claims that although Hyman had permission to use Employer's van to get a meal, his additional use of the van to transport Angela was a prohibited "use" per company rules. Continuing, United argues since Hyman was engaged in a nonpermissive use at the time of the accident, i.e., transporting Angela, the omnibus clause of its policy did not extend coverage to Hyman for this accident.

To support this argument, United cites *Weathers v. Royal Indem. Co.* 577 S.W.2d 623 (Mo.banc 1979):

"Recent cases have distinguished between *using* or *actual use* and *operation* of a vehicle. *Use* is said to involve its employment for some purpose or object of the user. *Operation* of the vehicle, on the other hand, is said to involve the driver's direction and control of its mechanism for the purpose of propelling it as a vehicle."

*Id.* at 627. From this, United argues "[w]hether ... Hyman had Angela ... as a passenger has nothing do with the 'driver's *direction* and *control* of its mechanism *for the purpose of propelling* it as a vehicle.'" (Emphasis by United.) Relying on the definitions in *Weathers,* United asserts the court misapplied the law and erred

when it found Employer's "no-passenger" rule "was a restriction on operation instead of use." United insists this mistaken finding led to reversible error because it was the premise for the court's conclusion that United was "obligated to extend coverage to Mr. Hyman under the omnibus clause of the policy and under Section 303.190 RSMo."

■ At the time of this accident, Hyman was operating the van and, except for the questions raised by transporting Angela and drinking alcohol, was acting within the scope of the permitted use, i.e., going to get a meal. United does not contend otherwise.[3] The essence of United's argument is that, once Hyman made concurrent uses of Employer's van, one permissive use (going for a meal) and one nonpermissive (transporting Angela), the nonpermissive use trumped the permissive one. Thus, according to United's argument, the permissive use was thrust beyond the scope of the omnibus protection. We do not agree.

United fails to support such proposition with on-point authority and ignores case law which, if not directly on-point, is instructive .[4] In this regard, we first consider *Rainwater v. Wallace,* 169 S.W.2d 450 (Mo.App.1943), affirmed at 351 Mo. 1044, 174 S.W.2d 835. There an employee had an accident while driving his employer's truck on a dual mission, i.e., in connection with his employer's tree surgery business, and also a private mission of his own. In holding the employee was insured via an omnibus clause in his employer's liability policy, the court wrote:

---

**3.** In its brief filed with this court, United concedes "[t]here is no dispute that ... Hyman had the permission of [Employer] to use the van to go to a restaurant when he was out of town on business."

**4.** By "on-point" authority, we refer to cases in point on the facts, that is, where liability insurance coverage was denied because an employee, otherwise using and operating his or her employer's vehicle with permission, violated the employer's "no-passenger" rule.

"[I]t is impossible to determine [from the employee's testimony] whether his private business of seeking to buy a house or the tree surgery business of his employer, was the principal object of his trip. From his testimony, it appears that he had a *dual purpose, one being no more important than the other.*"

"The omnibus clause in the policy does not recite that the persons covered therein, (who were those other than the named insured) should be using the vehicle at the time of the accident, as the servant of the named insured, but merely with the permission of the named insured. Other parts of the policy indicate that, in addition to the permission of the named insured, the automobile must have been in use in the commercial business of the named insured, which in this instance was that of tree surgery. [The employee's] testimony shows that while he was driving the truck on a mission of his own, yet at the same time, he was driving it in connection with the business of his employer. The policy is ambiguous in that it does not provide what the result should be under such circumstances. The policy, being ambiguous, it will be construed in favor of the insured, and so construing it, we hold that the truck was being driven in the business of the insured, and in direct connection therewith, at the time of the collision."

169 S.W.2d at 455 (citations omitted) (emphasis supplied).

In *Hartford Accident & Indemnity v. Collins,* 96 F.2d 83 (5th Cir.App.1938), an employer's rules prohibited employees from hauling passengers in the employer's vehicle. Even so, an employee invited a *guest to accompany him on an automobile trip which "was in the line of [the employee's] employment." Id.* at 84. Litigation arose regarding liability coverage for the employee after the guest was injured in an accident. The subject policy defined "insured" to include "not only the named insured but also any other person using the automobile * * * provided the declared and actual use of the automobile is 'pleasure or business,' or 'commercial' . . . and provided further that the actual issue is with the permission of the named insured." *Id.* The court found the employee continued to be an insured despite his violation of company rules against transporting guest passengers, reasoning:

"[The employee's] use of the car on the trip was with his employer's permission. He was therefore in general protected against liability for damages. If he struck [his injured passenger] on the road, he would be insured. If he had hurt someone riding with him not in violation of rules, he would be protected by the policy. Does the fact that he was violating a rule in taking [the passenger] into the car annul the employer's permission to use the car. We think not. . . . We think [the employee] continued to be an insured, though he broke a rule of his employer in taking a companion into the automobile."

*Id.*

In *Hawley v. Indemnity Ins. Co. of North Am.,* 257 N.C. 381, 126 S.E.2d 161 (1962), insurance coverage for an employee became an issue after he had an after-work-hours accident with the employer's vehicle. The accident occurred as the employee drove himself and three other people to a Western Union office so a female passenger could pick up some money. At trial, there was contradictory evidence regarding the scope of an employee's permission to use the vehicle, i.e., whether the employee was limited to driving back and forth to work or was simply told, "Don't do too much running around with it at night." *Id.* at 164. Because of a faulty jury in-

struction, the North Carolina court reversed a judgment favorable to the employee regarding coverage. Although the employee had repeatedly been warned not to have passengers, the "no-passenger" restriction was not part of the faulty instruction and appears not to have been an issue on appeal. Even so, in an apparent attempt to render guidance to the trial court on remand, the *Hawley* court wrote:

> "Where the violation of permission consists merely of carrying guests in the vehicle, and the employee's use of the vehicle is otherwise permitted, the fact alone that the employee permitted riders on the vehicle will not serve to annul the permission of the employer so as to take the employee out of the protection of the omnibus clause. This is in accord with the substantial weight of authority. 5 A.L.R.2d 654."

*Id.* at 167[18].

In 5 A.L.R.2d § 21 at 654 the comment cited in *Hawley* is as follows:

> "Where the violation of instructions consists merely of carrying guests in the vehicle a substantial number of courts have held that, if the employee's use of the automobile was otherwise permitted, the fact alone that the employee permitted riders on the vehicle will not serve to annul the permission of the employer so as to take the employee out of the protection of the omnibus clause."

■ We pause briefly to acknowledge that decisions by the courts of other states are not controlling on Missouri courts. They are persuasive, however, when the facts are similar, *see Cherry Manor v. Am. Health Care*, 797 S.W.2d 817, 821[10] (Mo. App.1990), and are based on "sound principles and good reason." *Missouri Tp. Chariton County v. Farmers' Bank*, 42 S.W.2d 353, 356[4] (Mo.Sup.1931).

It is unnecessary to rule expressly upon whether the trial court erred when it found "Hyman's transporting of [Angela] related to the 'operation' of the van and not to the 'use' of the van." Assuming, without deciding, Hyman's act of transporting Angela in the van was a "use" thereof and not an "operation" (as United contends), undisputed evidence shows such use (passenger transportation) was only one part of Hyman's dual use of the van. As in *Rainwater*, the non-permissive use (hauling Angela) was no more important than the permissive use (transporting Hyman to get a meal). Under the circumstances, *Rainwater* and the foreign cases cited (which we find persuasive), provide authoritative support for the trial court's finding that the omnibus clause in this policy extended coverage to Hyman for this accident despite his violation of Employer's rule against hauling passengers. The trial court reached the correct result; therefore, we will not disturb that result because it may have assigned an erroneous reason for its judgment. *Farm Bureau Mut. Ins. Co. v. Broadie*, 558 S.W.2d 751, 753[1] (Mo.App.1977). This court's chief concern is the correctness of the result, not the route by which it was reached. *Id.* at 753. For the reasons stated, the trial court reached the proper result when it found Hyman was covered. Point I is denied.

## POINT II: UNITED'S "IMPLIED PERMISSION" ARGUMENT

United's second point on appeal reads:

"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR ... RESPONDENTS BECAUSE IT CONCLUDED AS A MATTER OF LAW THAT ... HYMAN HAD PERMISSION TO USE [EMPLOYER'S] VEHICLE EVEN THOUGH THE CASE LAW CLEARLY HOLDS THAT IN THE ABSENCE OF AN EXPRESSED PROHIBITION ON USE,

WHETHER ONE HAS PERMISSION TO USE A VEHICLE IS A QUESTION OF FACT."

Other than an abstract statement of law, this point yields little or no clue about the legal reasons for United's claim of reversible error, nor does it explain in summary fashion why, in this case, those legal reasons support the claim of reversible error. As such, the point does not comply with Rule 84.04(d). Rule 84.13(a) instructs that allegations of error not properly briefed are not be considered on appeal.

Even so, we have, *ex gratia*, turned to the argument part of United's brief in an attempt to understand the point. There, United writes:

> "The trial court in rendering judgment for [Respondents] did not specify in its judgment whether it found . . . Hyman had express permission or implied permission to use the van at the time of the collision. Given that [Respondents] argued in their cross-motions for summary judgment that . . . Hyman's permission to use the vehicle was implied, appellant *assumes* that the trial court determined that . . . Hyman's permission was implied." (Emphasis supplied.)

The rest of United's argument under this point is difficult to follow, but paraphrasing liberally we take its argument to be: Summary judgment for Respondents was improper because (a) fact issues existed about Hyman's implied permission to use the van at the time of the collision, (b) there was not sufficient evidence to support a finding of implied permission by Hyman to operate the van; and (c) even if permission could be implied, Hyman committed a "major" deviation from that permission by having Angela as a passenger.

■ Whatever may be the correctness of the law which United urges regarding implied permission, it is not necessary to decide if genuine issues of material facts exist here concerning implied permission. This follows because (1) it is undisputed that when Hyman was working out of town, he had United's permission to use the van after work-hours to obtain a meal, (2) no evidence exists to contradict Hyman's assertion he was going to a restaurant at the time of the accident, and (3) we have already found the express permission given Hyman to use the van for transporting himself to a restaurant was not annulled by his violation of the "no-passenger" rule. Thus, there exists a substantial basis upon which to affirm the trial court's judgment. We must affirm a trial court's judgment if the result is correct on any tenable basis. *In re Estate of Looney*, 975 S.W.2d 508, 519[28] (Mo.App.1998). Under the circumstances, any discussion or opinion by this court about whether Hyman had implied permission to use the van would be merely advisory. Appellate courts do not render advisory opinions or decide nonexistent issues. *Id.* at 519[29]. It is for this reason we refrain from deciding Point II.

## POINT III: WAS ALCOHOL USE A SUBSTANTIAL DEVIATION FROM PERMISSION?

■ United's third point maintains the trial court erred in finding Hyman was insured because Hyman's act of driving the van while drinking alcohol violated Employer's directive and "constituted a substantial deviation from the permission granted." The premise of United's third point, as revealed by its argument, is that Hyman's act of driving the van while drinking alcohol either (1) terminated his permission to use the van as a matter of law, or (2) presented a factual question of whether Hyman's violation of the "no alcohol while driving" rule was a deviation from the permitted use so "substantial" as

to terminate his right to use the van for any purpose. The premise is faulty, however, and the point fails for reasons stated in *Allstate Ins. Co. v. Sullivan*, 643 S.W.2d 21 (Mo.App.1982). There, Sullivan rented a car and in doing so, signed a contract that listed restrictions on his "use, operation or driving of vehicle." *Id.* at 22. Included was a restriction that "under no circumstances should vehicle be used, operated or driven by any person ... [w]hile under the influence of intoxicants or narcotics...." *Id.* Sullivan was driving the rented car while intoxicated when he had an accident that produced claims against him. A trial court found the omnibus clause extended coverage to Sullivan despite the rental contract's prohibition against driving, operating, or using the car while drinking. The eastern district affirmed, declaring there is "no merit to [the insurer's] argument that this policy requires permission both as to use and operation." *Id.* at 23. Continuing, the court wrote:

> "The question then becomes solely whether the *use* (as distinct from the operation) by Sullivan of the vehicle was within the scope of permission given by Budget. It clearly was. There is no claim that Sullivan was utilizing the vehicle for a purpose prohibited by the rental agreement. The only attack is upon the operation of the vehicle.... We find it unnecessary to discuss the difference between 'use' and 'operation' as it relates to permission of the named insured. That matter has been thoroughly analyzed in *Weathers v. Royal Indemnity Co., supra,* and *Farm Bureau Mutual Insurance Co. v. Broadie,* 558 S.W.2d 751 (Mo.App.1977). It is sufficient here to say that under those cases Sullivan was *using* the car with the permission of Budget, whether or not he was operating within the constraints of Budget's permission."
> *Id.*

In *New York Cas. Co. v. Lewellen,* 184 F.2d 891 (8th Cir.1950), the court, in applying Missouri law, reached a similar conclusion.

> "[W]e agree with the trial court that the violation of ... a rule [concerning the use of firm equipment by its employees while drinking] is not sufficient to terminate automatically the employer's express permission for the actual use of the vehicle at the time an accident occurs."
> *Id.* at 894.

Relying on *Sullivan* and *Lewellen,* we find the omnibus clause in Employer's policy extended coverage to Hyman for this accident despite his violation of Employer's rule against drinking alcohol while driving the van.

In reaching this conclusion, we have not ignored cases cited by United from other jurisdictions which hold that an employee who uses his employer's vehicle while under the influence of alcohol, in violation of an express specific restriction against such use, substantially deviates from the original use, and, thus, the employee is not insured under the employer's policy. *See, e.g., General Accident Ins. Co. of Am. v. Margerum,* 375 Pa.Super. 361, 544 A.2d 512 (1988); *Warner Trucking, Inc. v. Carolina Cas.,* 686 N.E.2d 102 (Ind.1997); *Barfield v. Royal Ins. Co. of Am.,* 492 S.E.2d 688 (Ga.App.1997). When there is no controlling authority from Missouri courts, we *may* look to judicial decisions of sister states for assistance in discovering expressions of public policy. *Eyerman v. Mercantile Trust Co.,* 524 S.W.2d 210, 217[9] (Mo.App.1975). Earlier in this opinion, we did rely on foreign authority for guidance. However, opinions of courts of other states, even on similar facts, do

not have controlling effect. *Triplett v. Shafer,* 300 S.W.2d 528, 530 (Mo.App. 1957). "Like witnesses, foreign authority should be weighed and not counted." *Michigan Mut. Liab. Co. v. Stallings,* 523 S.W.2d 539, 545[6] (Mo.App.1975). This court adopts the views expressed in *Sullivan* and *Lewellen* rather than those stated in *Margerum, Warner Trucking,* and *Barfield.* We do so in the belief that *Sullivan* and *Lewellen* are in harmony with Missouri's public policy concerning liability coverage for negligent motor vehicle operators. *See Halpin v. Am. Family Mut. Ins. Co.,* 823 S.W.2d 479, 482[4] (Mo.banc 1992). Point III is denied.

The judgment is affirmed.

PARRISH, P.J., concurs.

MONTGOMERY, J., concurs.