In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-170 CR


____________________



PAUL LEE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 1st District Court


Newton County, Texas


Trial Cause No. ND5351






MEMORANDUM OPINION


 A jury convicted Paul Lee of aggravated sexual assault and sentenced him to ninety-nine years' confinement in the Texas Department of Criminal Justice, Institutional Division,
with a $10,000 fine. Lee appeals raising three issues.

 In his first issue, Lee argues the trial court erred in denying his motion for mistrial and
challenges for cause during voir dire. Lee asked the panel the following question:

 Let's just say this case all--you've heard all of the testimony. You've had the
chance to see all the evidence that's been presented in this case. You go to the
jury deliberation room to preside and you make a decision--excuse me,
please--and you decided that Paul Lee is guilty of sexually assaulting a four
and a half year old child. Now, you have to decide, after making that decision,
what type of punishment to give to Paul Lee. My question to you - as [the
State] pointed out to you, the range of punishment is 5 to 99 years and also
probation. All right. My question to you: Will you be able to focus on 5 to
99 years, as well as consider probation?


Defense counsel asked the panel if they could consider probation under the specific facts of
the case at bar and comes perilously close to an attempt to commit the prospective jurors to
a certain punishment based on the facts peculiar to the case being tried. Therefore, in
accordance with Sadler v. State, 977 S.W.2d 140, 143 (Tex. Crim. App. 1998), we find Lee's
argument to be without merit. "The law requires jurors to use the facts to tailor the
punishment to the crime as committed by the guilty defendant. As such, it would be
nonsensical to rule that a juror who will use the facts to fit the punishment to the crime is
unqualified and thus challengeable for cause--such a juror would be doing exactly what the
law requires." Id. (emphasis in original). See also Allen v. State, 54 S.W.3d427 (Tex. App.--Waco 2001, pet. filed). As the jurors were thus not challengeable for cause, the trial court
did not err in denying Lee's challenge for cause and motion for mistrial. Accordingly, issue
one is overruled.

 Issue two asserts defense counsel's failure to object to the admission into evidence of
a videotape of the victim's interview at the Garth House constituted ineffective assistance
of counsel. Without commenting on the admissibility of the Garth House interview, the
failure to object to inadmissible evidence is not necessarily ineffective assistance. See Cain
v. State, 976 S.W.2d 228, 237 (Tex. App.--San Antonio 1998, no pet.). In reviewing a claim
of ineffective assistance, we "must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance; that is the defendant must
overcome the presumption that, under the circumstances, the challenged action 'might be
considered sound trial strategy.'" Jackson v. State, 877 S.W.2d 768, 770-71 (Tex. Crim.
App. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80
L.Ed.2d 674 (1984)). The record reflects that defense counsel cross-examined the victim on
the statements made in the videotape, as well as the interviewer. Furthermore, during closing
argument defense counsel used the videotaped statements to argue the victim's testimony was
not credible because he had been coached. Lee has not demonstrated trial counsel lacked
legitimate and professionally sound reasons for her actions. See Bone v. State, 77 S.W.3d
828, 836 (Tex. Crim. App. 2002). Accordingly, we find Lee has not shown counsel's
performance was deficient. See Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986). 
Issue two is overruled.

 Lee's final issue claims the evidence of one element of the offense, penetration, was
factually insufficient to support his conviction. Under section 22.021 of the Texas Penal
Code, the elements of the offense of aggravated sexual assault applicable in the present cause
are: (1) intentionally or knowingly, (2) caused the penetration of the anus of a child by any
means, and (3) the victim is younger than 14 years of age. See Tex. Pen. Code Ann. §
22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 2005). 

 Letha Mae Gatson, the great-grandmother of X.W., testified that her daughter and
Paul Lee brought X.W. to her house on the evening of September 20, 2002. She ran bath
water for X.W. and had gone into the kitchen when she heard X.W. crying. Gatson returned
and X.W. told her, "It hurt." She asked, "What hurt?", but X.W. just said, "It hurt." X.W.
was crying and screaming. Gatson had him lay down across her lap. She testified, "He had
blood on him. He was red. He's all messed up. So, I touched him with a tissue; and it was
blood on it." Gatson asked X.W., ". . . what's wrong with you? What happened? Did
somebody do something to you?" X.W. said, "Uh-huh"; he was crying and shaking. Gatson
asked, ". . . who did it?" and X.W. said, "Paul." Gatson then asked, "Did he dig his finger
in you or something?" and X.W. said, "Uh-huh." Gatson called X.W.'s mother to take him
to the emergency room. 

 Stacy McCain, X.W.'s mother, testified she left X.W. at her mother's house that
afternoon, with Lee; her mother was on her way home from work. McCain went to buy
groceries and then went home. Her grandmother called, and she took X.W. to the hospital. 
As a result of the examination, the hospital concluded "something penetrated him" and
advised her to take X.W. to the Garth House. 

 Charlotte Morgan, a sexual assault nurse examiner, testified she examined X.W. 
According to Morgan, X.W. told her, "He pulled my clothes down. . . . He put my - he put
his hand in my butt.. . . And then my Granny found blood on me. He gave me candy."
Morgan found lacerations on the anus, one still had some minor bleeding. Morgan testified
injury was shown, and saw no evidence of trauma that had healed. According to Morgan,
there was evidence X.W.'s anus had been penetrated by a foreign object within days or hours
prior to her examination. Morgan agreed the physical evidence gathered, including "the
bloody shorts", was consistent with the history X.W. gave her about what happened. 

 Kim Hanks, a forensic interviewer employed through the Garth House, questioned
X.W. three days after the alleged assault. The interview was videotaped and shown to the
jury. X.W. told Hanks that Paul "put his hand in me." X.W. said it happened one time, on
Granny Lynn's bed. X.W. said the sun was out, Granny Lynn was at work, and his mother
had brought him there. X.W. said his clothes were off and that Paul took them off, but Paul's
clothes were on. X.W. said he was sitting on the bed and had to turn over. X.W.
demonstrated laying over on his side. X.W. said Paul offered him candy and gave him
chocolate. X.W. further said it hurt, that there was blood, that his granny wiped his butt and
saw blood, and that he had to go to the hospital. X.W. said Paul told him not to tell. 

 Chanita Lynnette Smith, X.W.'s grandmother, testified she saw Lee the next day at
the county jail. According to Smith, Lee did not deny the allegations but said, "'All I did was
stick my finger and that's all.' And bust out laughing. He thought it was a game." Smith
testified she saw Lee at the prison about three weeks later and he still thought it was funny
and said he could get away with it. The State asked, "Did he say why he felt like he could
get away with it?" Smith answered, "Because he done done it to other kids before." Smith
also testified that Lee threatened her and her family. 

 Christopher Eugene Gatson (1) was residing in the Newton County Jail at the time of
trial. He was locked up with Lee in 2002 at the Correctional Services Corporation prison on
Highway 87 North. Gatson testified that Lee ". . . was saying that the doctor said that the
baby had been messed with, to my understanding. And that they said there was two fingers
stuck up the baby's butt but he said it wasn't two. It was one." 

 Yolanda Hunter was called by the defense in an apparent attempt to provide a motive
for Smith to lie. On cross-examination she testified that after September 20, 2002, Lee came
to her house and offered her $1,000 and a pound of marijuana to say she was with him on the
night in question. 

 In evaluating Lees's factual-sufficiency challenge, we discuss the evidence he claims
is most important in allegedly undermining the jury's verdict. See Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003). Lee notes that Morgan testified she conducted a genital
exam of the outside area only, did not penetrate the inside of the rectum, and if there was any
penetration of the inside of the rectum, her examination would not have revealed it. Morgan
found lacerations on the outside of the anus, but was unable to determine what object could
have cause the scarring. Lee further points out that X.W.'s statements regarding penetration
were in response to leading questions by the State and his great-grandmother. At trial, the
State asked X.W., "Were you with him one day . . . when he stuck his finger in your
bottom?" X.W. answered, "Yes Sir." As noted above, X.W. gave affirmative responses to
Letha Gatson's questions but made no statement regarding the assault. Lee notes that in each
of the above instances X.W.'s affirmative response was to a leading question concerning
penetration and that X.W. did not state, without being led, that Lee penetrated his anus. Lee
acknowledges that X.W. did say "He put his hand in me" when being interviewed by Hanks. 
 However, Lee asserts, the video testimony was inadmissible, therefore that supporting
evidence was inadmissible. Whether or not the videotaped interview was admissible, we
consider it in determining whether the evidence is factually sufficient. See Arzaga v. State,
86 S.W.3d 767, 778 (Tex. App.--El Paso 2002, no pet.). 

 X.W. answered in the affirmative to questions by Letha Mae Gatson and the State as
to whether there had been penetration. X.W.'s statements to Hanks and Morgan also indicate
penetration. Further, there is the physical evidence of penetration through the injuries to the
rectum and the resulting bleeding, as well as X.W.'s pain. Penetration may be proven by
circumstantial evidence. See Nilsson v. State, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972). 
Proof of penetration, however slight, is sufficient to sustain an allegation of sexual assault. 
See Sherbert v. State, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976); Zuniga v. State, 811
S.W.2d 177, 180 (Tex. App.--San Antonio 1991, no pet.). See also Hemphill v. State, 826
S.W.2d 730, 733 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd untimely filed).

 Upon considering all the evidence in a neutral light, we find the evidence supporting
the verdict is not too weak to support the jury's finding of guilty beyond a reasonable doubt. 
See Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). Further, the evidence
contrary to the verdict is not so strong that the beyond-a-reasonable-doubt standard could not
have been met. Accordingly, the jury was rationally justified in finding guilt beyond a
reasonable doubt. Id. Issue three is overruled.

 The judgment of the trial court is AFFIRMED.


 ________________________________

 CHARLES KREGER

 Justice


Submitted on February 3, 2005 

Opinion Delivered March 16, 2005

Do not publish 


Before McKeithen, C.J., Kreger, and Horton, JJ.

1. Mr. Gatson did not know whether he was related to Letha Mae Gatson or her
husband.